## Custer *against* Detterer.

A *scire facias* to revive a judgment, and a judgment thereon for the plaintiff, is a good plea in bar to another *scire facias* on the original judgment.

A judgment or other definite lien must be taken from the funds produced by the sheriff's sale on an execution; and if that is omitted, the lands sold cannot be resorted to in the hands of the purchaser.

A purchaser of lands sold by order of the Orphans' Court, holds the lands free and discharged from debts due by the deceased.

**ERROR** to the Common Pleas of *Montgomery* county.

It was a *scire facias* brought by Levi Custer, executor of Eve Custer, to the use of Mathias Brumback, against Abraham Detterer and Christian Detterer, administrators of Christian Detterer deceased, with notice to Abraham Krupp, Jacob Harley, Jacob Hallman, Christian Detterer, Jun., Abraham Detterer, Jun., and the trustees of the Presbyterian congregation of Norriton and Lower Providence, terre-tenants.

The facts of the case, and the points involved in it, are sufficiently stated in the opinion of the court. The case was argued by

*S. Miller, Jun.* and *G. R. Fox*, for the plaintiff in error; and, *Freedley, contra.*

The opinion of the Court was delivered by

HUSTON, J.—I shall endeavour to state the records and facts as they appeared in the Common Pleas.

The defendants' intestate died on the 17th of January 1818. To November term 1824, a suit was commenced by the plaintiff against the defendants, on a bond of their intestate; and at September term 1826, judgment was rendered in favour of the plaintiff for $612.32; which judgment was subsequently affirmed by the Supreme Court, on the 23d of February 1829.

To April term 1829, No. 24, a *fieri facias* was issued on this judgment against the administrators. This was stayed by the plaintiff, at April term 1830.

To August term 1830, No. 91, a *scire facias* to revive the judgment *post annum et diem* issued, which was served on the administrators only, and not on the terre-tenants. At that time, and long before, all the land had been sold, and the vendee had sold again, and the title of one of these vendees had been sold, by order of the Orphans' Court, for much more than the above judgment; and the part conveyed to another vendee had been sold by the sheriff, on

[Custer v. Detterer.]

judgment and execution against him: this also for much more than the above judgment.  At November term 1832, judgment on the above *scire facias* by consent: but, in the mean time, another *scire facias* had issued to August term 1831, on the original judgment.  This *scire facias* was against the administrators, with notice to Abraham Krupp, who was terre-tenant of two messuages, and about 23 acres of land, on which the above judgment is a lien; and with notice to Christian Detterer the younger, who is the terre-tenant of 19 acres of land, on which the above judgment is a lien; and with notice to Jacob Hallman, who is terre-tenant of 24 acres of land, (stated in another part of the record to be 47 acres), on which the above judgment is a lien, and proceeds to describe the whole tract by the township, and four persons whose lands it adjoins.

The sheriff returned the writ, served on defendants, the administrators, and on Abraham Krupp, C. Detterer, Jun., and Jacob Hallman.

To this *scire facias* the administrators pleaded payment, and further pleaded that the said plaintiff ought not to have or maintain this action against them, because, they say, that to August term 1830, No. 61, the plaintiff impleaded the said defendants in a writ of *scire facias* issued on the same judgment, to which the said defendants have pleaded, and which is still pending before the said court; and this the said Abraham and Christian are ready to verify by the record—wherefore they pray judgment, if the said plaintiffs ought to have and maintain their said action thereof against them.

To this plaintiff replied *non solvit*, and for further replication, that the said *scire facias* of August 1830, No. 61, is not pending in the court in manner and form, &c.; and this said plaintiff is ready to verify by the record, when and where this court shall order.

To this defendants demurred on 10th January 1833, and after preamble allege for cause of demurrer—that the plaintiff, in his replication, does not answer the plea of said defendants, but alleges that the said plaintiff ought not to be barred from having his action, &c. because the writ of *scire facias* mentioned in defendants' plea, is not pending in the court in manner and form as the said defendants have alleged—which is no denial of defendants' plea, but is evasive—it does not accept defendants' plea; and also in other respects is informal and insufficient.

On the same day plaintiff filed an additional replication; that he ought not to be barred because the said *scire facias* of August 1830, No. 61, is not now pending, but a judgment thereon has been entered since the plea of defendants has been pleaded as above—and for further replication says that notice of the impetration of the above writ has been given to A. Krupp, C. Detterer the younger, and Jacob Hallman, who are terre-tenants of the land on which the judgment upon the writ of *scire facias* issued is

III. — c *

[Custer v. Detterer.]

a lien; wno have appeared and taken part in the defence, &c. &c. The terre-tenants also plead and set out, at length, their several titles to the part held by each, (on our paper-book no replication or demurrer to these pleas of terre-tenants appears). On 23d March 1833, plaintiff joined in the demurrer above-mentioned; 26th Nov. 1833, judgment for the defendants on the demurrer.

On the 31st March 1834, the *scire facias* now before us issued, and was served on A. Detterer, C. Detterer, Abraham Krupp, Jacob Harley, Jacob Hallman, C. Detterer, Jun., A. Detterer, Jun., and the trustees of the Presbyterian congregation of Norriton and Lower Providence, terre-tenants.

To this there was, 1. a plea of payment, with leave to give the special matter in evidence, replication, *non solvit*, and issues. There were next special pleas of defendants, the administrators, and replications and demurrer. Then special pleas of the terre-tenants, and demurrers and joinder. These last were, by leave of court, withdrawn, and the cause tried on payment, with leave to give the special matter in evidence. The special pleas of administrators demurred to, were argued, and judgment for plaintiff.

The special matter to be given in evidence is set out, and notice of it to plaintiff. It states the sale, by all the heirs, to A. Detterer, in 1819; his sale of 19 acres 19 perches to Hooven; the death of Hooven, and the sale of his part by his administrator, on order of the Orphans' Court, duly confirmed by said court, for $2371, to Abraham Krupp: — this in 1823: that Abraham Krupp, in 1833, conveyed the same premises to Jacob Harley, who now holds the same free from the lien of the said judgment on which the *scire facias* issued; and further, that the said Abraham Detterer did sell and convey another part of the said farm, to John Detterer; which said portion was taken in execution and sold by the sheriff, under process from the Court of Common Pleas of Montgomery county; which said land is now held by Jacob Harley, by a conveyance from the purchaser at sheriff's sale, free from the lien of said judgment.

And further, that the said Abraham Detterer, for a full consideration, did grant and convey another part of said land to Jacob Hallman; who, by virtue of such conveyance, now holds the said portion free from the lien of said judgment.

And further, that the said Abraham Detterer and wife, for a full and fair consideration, did sell and convey the residue of said tract to C. Detterer, Jun.; by virtue of which conveyance the said C. Detterer holds the said portion free from the lien of said judgment.

And further, will show and contend that no part of said tract, of which they were seised at the time of issuing said *scire facias*, was liable to said judgment. For which purpose they will give

[Custer v. Detterer.]

in evidence all proceedings of courts, and all deeds respecting their several titles.

And the paper-book states that all proceedings by courts, and all deeds, were given in evidence; but they are not specifically set out, nor were they produced here.

There was another plea, that the decedent left personal estate greatly more than sufficient to pay all debts, viz. $1573 over and above all debts; and the administration account showing this was exhibited. This account was settled about a year after decedent died; but as the court decided against the defendants, on this part of the issue, we need not notice it further.

Charge of the court.

This is a *scire facias* issued on the 31st March, 1834, to April term 1834, No. 42, brought by Levi Custer, executor of Eve Custer, to the use of Mathias Brumback, against Abraham Detterer and Christian Detterer, administrators of Christian Detterer, deceased, with notice to Abraham Krupp, Jacob Harley, Jacob Hallman, Christian Detterer, Jun., Abraham Detterer, Jun., and the trustees of the Presbyterian congregation of Norriton and Lower Providence, terre-tenants. The plaintiffs have a suit, No. 52, November term 1824 — Levi Custer, executor of Eve Custer, deceased, for Mathias Brumback. There was a trial, and on the 2d of September 1826, a judgment was obtained for $612.32, in debt on a bond. On the 10th of February 1827, a writ of error was sued out, and on the 23d of February 1829, the record was returned with the judgment affirmed. A *fieri facias* issued, No. 24, April term 1829; and on the 19th of April 1829, this execution was stayed by the plaintiff. The plaintiff has further shown, that on this judgment a *scire facias* issued, No. 52, August term 1830, also a *scire facias* to November term 1831, which we shall consider more particularly hereafter.

On the *scire facias* issued in 1830, a judgment was given on the 21st of November 1832. This was a general judgment, by consent. Plaintiffs proved that old Christian Detterer died at the place where Jacob Harley keeps store, on the 17th of January 1818, and that the terre-tenants are in possession of the estate left by Christian Detterer. The defendants have shown that the administrators, who are defendants, settled their administration account on the 24th of April, 1819. It showed a balance in the personal estate against them, and in favour of the estate, of $1573.86½. The real estate had been sold by the heirs, for when the administrators brought in their account, which was confirmed at August term 1819, the balance returned in the hands of the administrators, was $3519.25. It further appears, that on the 1st of January 1819, all the heirs sold out to Abraham Detterer, and the widow released her dower. On the 2d of April 1819, Abraham Detterer and wife sold a part of the estate for $3569 to Francis Hooven. Hooven not long after died, and in 1822, his

[Custer v. Detterer.]

administrator sold his real estate, by order of the Orphans' Court, to Abraham Krupp, for $2371, by John Hyser. In 1833, Krupp sold to Jacob Harley. On the 1st of May 1822, Abraham Detterer conveyed 49 acres 84 perches to Jacob Hallman. Part was sold at the sheriff's sale to Christian Detterer, Jun., and the deed acknowledged in 1825, by Sheriff Boyer.

The defendant has also shown the *scire facias*, No. 52, of August term 1831. That *scire facias* gave notice to the terre-tenants, and the sheriff returned that he had notified Abraham Krupp, Christian Detterer, the younger, Jacob Hallman, &c., the terre-tenants.

The administrators appeared, and pleaded that the *scire facias* of 1830 was pending and undecided; and the terre-tenants appeared, and severally pleaded that the whole estate, 78 acres 47 perches, was sold by the heirs, and released to Abraham Detterer, that he sold 19 acres 19 perches to Francis Hooven in fee, who sold to the other terre-tenants. To this the plaintiff demurred, and on this plea and the replication, the court gave judgment for the defendants. As we understand this judgment, it was, that judgment was rendered by the court in favour of the administrators, that there was a prior *scire facias* pending against them in the original suit, but the terre-tenants, who were summoned to appear and did appear, spread their whole title on record; and on a demurrer, judgment was rendered in their favour. What is the legal effect and operation of these judgments? The court instruct you that it does not bar the right of the plaintiff to recover against the administrators, nor do the court see any reason why the plaintiff should not have a judgment *de bonis*, against the estate. But in the judgment of the court, the terre-tenants, who spread their whole defence and title on record, to that defence and plea of the terre-tenants the plaintiff demurred, and the terre-tenants joined in demurrer; it is a legal bar to the plaintiff's right to recover against them. This being the instruction of the court, it relieves the jury from further inquiry as to the terre-tenants, and from inquiring how much each should pay.

The sale of the part of Christian Hooven, by order of the Orphans' Court, in our opinion could not be recovered against. After the sale, the judgment creditor could not pursue the land; he was bound to look to the fund raised by the sale for the payment of his lien, if he had one. The part sold by the sheriff would be in the same situation. The purchaser at sheriff's sale, takes the land discharged of all liens by judgment, and the judgment creditors must look to the fund for the payment of these claims.

The plaintiff's counsel say there are about 16 acres of the 78, that were not sold either by the order of the Orphans' Court or by

the sheriff, and that they have a right to look to the 16 acres for payment.

It is conceded in the argument, that all the terre-tenants of the whole 78 acres, appeared to the *scire facias* of 1831. We have before instructed you this bars the plaintiff's right to resort to any part of the estate released by the heirs to Abraham Detterer, by deed of the 1st of January 1819.

After the argument closed, several points were put to the court. So far as they are material to the cause, they are fully answered in the charge. The court deem it unnecessary to set them out specially.

To this opinion of the court the plaintiff excepted.

The jury found a verdict for the plaintiff and against the administrators, for $1273.65, and in favour of the terre-tenants.

Errors assigned:

1. The court erred in charging the jury, " that the administration account of the said defendants, showed a balance of the personal estate against them and in favour of the estate of $1573.83½." The administration account shows on the contrary, that the personal estate of the decedent was entirely insufficient for the payment of his debts.

2. In charging the jury, that the judgment for the defendants on the demurrer, on the *scire facias* to August term 1831, No. 52, barred the right of the plaintiff to recover against the terre-tenants in this suit.

3. In charging the jury, that on the *scire facias* to August term 1831, No. 52, " the terre-tenants spread their whole defence and title on record,—to that defence and plea of the terre-tenants the plaintiff demurred, and the terre-tenants joined in demurrer." There was no evidence that the plaintiff in this *scire facias* ever demurred to, or in any way noticed the plea of the terre-tenants.

4. In charging the jury, that " the terre-tenants, who spread their whole defence and title on record, to that defence and plea of the terre-tenants the plaintiff demurred, and the terre-tenants joined in demurrer; it is a legal bar to the plaintiff's right to recover against them.

5. In charging the jury, that the sale of the part of Christian Hooven, by order of the Orphans' Court, could not be recovered against by the plaintiff.

6. In charging the jury, that after the sale of the land by order of the Orphans' Court, the judgment creditor could not pursue the land, but was bound to look to the fund raised by the sale for the payment of his lien, if he had any.

7. In charging the jury, that the judgment on the *scire facias* of August term 1831, No. 52, was a bar to another *scire facias*.

8. In charging the jury, that the sheriff's sale of a part of the land, discharged the plaintiff's lien upon that part.

[Custer v. Detterer.]

9. In charging the jury, that the plaintiff could not recover against the terre-tenants.

The cause here was argued for the plaintiff by gentlemen who did not try the case in the Common Pleas.

The first error assigned is not correct, in point of fact, and is also immaterial. It was not contended here that a balance of personal estate, being in the hands of administrators, at all affected the case; and defendant's counsel stated that this point was not made by them, at the trial. The Judge, in recapitulating the evidence, mentioned this fact as appearing by the copy of the account shown in the cause; but said nothing of its effect on the cause; but put the cause on other and distinct grounds.

The 2d, 3d, and 4th errors may be taken together. They relate to the same matter, and are partly fact and partly law—and that law not material, in this case.

We are not called on to reverse or decide on the correctness of the judgment of the court, in the *scire facias* of 1831. We have not the record of that case before us—only short notes of it, which the plaintiffs in error put on our paper-book. And it would be very unsafe to decide, that facts stated by the Judge as appearing by a record which was before him, were not truly stated; unless the record is brought here for our inspection. It would be strange, if pleas put in at length, and neither replied to nor demurred to, were left undecided; and it would be more strange, if the plaintiff considered them decided against him, and, instead of proceeding on them, abandoned the cause, and commenced another suit. This cannot be accounted for, except matters were as stated by the Judge. But I shall show that this too was immaterial; as, on the whole of this record, the plaintiff cannot sustain this *scire facias*.

The 5th, 6th, and 8th errors were not insisted on here; and could not be. The act of 1794 says, in express words, that the purchaser of land sold by order of the Orphans' Court, shall hold the land free and discharged from debts due by the deceased; and if anything is settled in this court, it is that a judgment, or other definite lien, must be taken from the fund produced by a sheriff's sale on execution; and, if that is omitted, the land sold can never be resorted to in the hands of the purchaser at such sale.

But there is another objection to this whole proceeding. At the last term at Pittsburgh, in *Collingwood* v. *Carson*, (2 *Watts & Serg.* 320), this court decided that a recovery on a *scire facias* to revive a judgment, and a judgment thereon for plaintiff, is a bar to another *scire facias* on the original judgment. The obligatory effect of this decision on this court is disputed. In drawing that opinion, no more was written than a reference to some few cases of our own, and to long practice, viz. 140 years. I shall endeavour to show that this length of practice is, of itself, sufficient to settle the law; at least, sufficient in the opinion of very distinguished Judges. I shall refer the reader to *Ram on Legal Judg-*

[Custer v. Detterer.]

*ments* 62, where many cases are cited; though I will extract a few—not *dicta*, but solemn expressions of opinion. Lord Ellenborough, in 15 *East* 225, says; " It is not only from decided cases, where the point has been raised upon argument, but also from the long-continued practice of the courts, without objection made, that we collect the rules of law." Lord Eldon says; " An inveterate practice, in the law, generally stands on principles that are founded on justice and convenience;" and Ram cites a book I have not— *Buck.* 279. " Uniform practice, of late years, may be considered as overturning an early decision." 2 *Barn. & Ald.* 467. " Long contrary usage ought to go a great way towards overturning any old *dictum.*" 4 *Burr.* 2294. Lord Eldon says, 2 *Russel* 19, " I take it to have been settled, by judicial practice, that such is the law of the country; and, where it has been so settled, counsel do not act according to a right view of their duty, if they seek to disturb that settled course of practice. That settled course forms the law of the land; and the Judge is bound to follow that law, so settled, and see that it is put into execution."

That the settled practice forms the law of the land, may seem a strong expression; but a little reflection will show it to be true. Justice, and all the principles of our law and constitution, require that the same law be measured to all. If every lawyer take a new path, it may be that every man will, as to costs at least, have a different bill or bills to pay.

Let us compare the proceedings on a *scire facias quare executio non*, in England, with our writ under the Acts of 1798, and 1827. In England, unless a *scire facias* is completed, by judgment, within a year, it is gone; and a judgment on it is of no effect; plaintiff must issue another. If he gets judgment, it is for the precise sum as the original judgment; or, to be more correct, it is that he shall have execution on the original judgment. The judgment on the *scire facias* does not bind or affect any lands not bound by the judgment on which it issues; and, in England, it need not be served, nor put into the hands of a sheriff—two *nihils* are sufficient. In this state, it is not a judgment that plaintiff shall have execution, but is a new judgment for a greater sum. Here it binds lands purchased by defendant since the first judgment—if he has any such—here it must be served on the defendant, his executor or administrator, and the terre-tenants—two *nihils* are not sufficient.

But is this practice ancient?—has it been sanctioned by judicial decision? In *Berryhill* v. *Wells*, (5 *Binn.* 56), we find the first reported case, In *Fries* v. *Watson*, (5 *Serg. & Rawle* 220, 222), we find the President (Walker) had decided, that the interest was not to be calculated and made principal on *each successive scire facias.** The opinion was not delivered until the year after

* I think it right to state, that in that, a *scire facias* had issued to every fifth term during 14 years; and thus plaintiff had claimed interest on interest. Judge Walker decided, and did in that case decide, that this was an abuse of the Act of 1700. I was counsel in Common Pleas and Supreme Court.

[Custer v. Detterer.]

the argument; and the opinion is founded on the different nature and effect of a *scire facias* in England and here; and what has always been the practice. Yeates was then on the bench. He came to the bar about 1761, and sat with Shippen and M'Kean, who were lawyers in 1750 and 1748, and must have practised with lawyers who were at the bar before 1740. This gave a century of practice, and two decisions affirming it. The next case I shall cite is 5 *Watts* 318. In that case there had been four successive *scire faciases;* and the prothonotary, in calculating the amount on them, gave interest from the first judgment to the first *scire facias* on which was entered judgment, and no sum; and so of the successive judgments. The prothonotary had been lately appointed. The court allowed all these successive judgments to be corrected according to 5 *Serg. & Rawle* 220, and interest calculated on each preceding judgment, and interest on it; and this court affirmed that, stating the difference between our law and practice, and that of England, at large, in 5 *Serg. & Rawle.* Judge Tilghman compared our *scire facias* to an action of debt; but he did not say it was like it in all respects. It is said that successive actions of debt may be brought on the same judgment: the first case I have found is *Cro. Eliz.* 608, where it is so said; and the reason given with some precision; viz. that you may have successive actions of debt on the same bond. In the same book, p. 817, before three Judges, two of whom had given the last decision, it is said the same point was decided, and the same decision, and it is again compared to a bond; but Gawdy, Justice, denies the law, as to a bond. In *Co. Rep., part* 6, p. 45, *Higgens's Case,* this matter of several successive recoveries on a bond, was heard, and says Coke, well debated at the bar, and well resolved, that after one judgment on a bond, you can have no other suit on that bond, until the judgment is reversed. Many cases were cited where the law had been decided as in *Cro. Eliz.* — the reasons on which those decisions stood, and the reasons for the present opinion: 'the second of these reasons is; if a man, after recovering a judgment, may have a new action for the same cause, and a new judgment, he may have infinite actions and infinite judgments, to the perpetual vexation and charge of the defendant; and, *infinitum in jure reprobatur.*

If it be true that one good reason is enough, this reason is as strong in this country as ever it was in England. I have found no case of two successive actions of debt on the same judgment, since the last case cited from *Cro. Eliz.;* and I am not disposed to go back three centuries, for a case founded on false principles.

I may say, that if that case is law, it has no bearing on the present case. Although C. J. Tilghman said our *scire facias* was like an action of debt on a judgment, in one particular, it does not follow that it is like it in all respects.

It to me seems strange to insist that our *scire facias* — founded

[Custer v. Detterer.]

on a different law — for a different object — producing different effects—must, in one particular, be like a *scire facias* in England. If this is established, the next case may ask us to go back to some other form of English proceeding — and so on, till we adopt it whole. We have only to overrule some three or four solemn decisions, and a century's practice, and then give our laws an effect never intended.

But it is said, why not permit a man to adopt a different course, if he pleases. Because he has harassed defendants enough already; because if long-settled practice is the law of the land, it will not do to permit every man to make new law for himself; and because all discoveries of new meaning in, or new practice under laws a century old, have turned out mistakes, and led to unsettling the law — uncertainty of title, and, not seldom, new and sometimes immoderate legislation; and I have yet to hear of any such case producing either benefit or satisfaction to the profession or the community. Courts sometimes censure changes of settled law or practice by the legislature, as especially if it is at all retroactive. Now all changes made by courts unsettle all past cases, which are not protected by some statute of limitation, and operate with peculiar effect on lands, as our law permits successive trials of the title to real estate.

It seemed to be understood that the issue between plaintiff and terre-tenants was alone before us. The administrators and terre-tenants pleaded separately. The whole argument related to the trial and opinion on their respective pleas. As to the administrators, they assigned no error, and did not appear by counsel. I have not considered them before us.

Judgment affirmed, as to terre-tenants.