**Paul E. SHEARER and Jeanne Shearer, his wife**

v.

**Charles W. NAFTZINGER and Elizabeth Naftzinger, Appellants.**

Superior Court of Pennsylvania.

Argued Oct. 28, 1997.

Filed June 12, 1998.

Richard W. Stewart, Lemoyne, for appellants.

Larry C. Heim, York, for appellees.

Before FORD ELLIOTT, EAKIN and OLSZEWSKI, JJ.

FORD ELLIOTT, Judge:

This case presents an outwardly simple issue; namely, whether a judgment against

personal property in Pennsylvania continues to "live" beyond the 20–year statute of limitations provided by 42 Pa.C.S.A. § 5529(a), pertaining to executions against personal property, if the judgment is revived by a writ of revival pursuant to Pa.R.Civ.P. 3025–3033 before the 20–year period has elapsed. To answer this simple question, however, we have had to review the ancient writ of *scire facias* as that writ has evolved in Pennsylvania. Based on our review, we conclude that early in its history, Pennsylvania adopted a minority view, in which the writ of *scire facias,* now the writ of revival, creates a new judgment for statute of limitations and other purposes. As a result, we affirm the trial court's entry of summary judgment in favor of Paul E. and Jeanne Shearer ("Shearers"), and its denial of summary judgment in favor of Charles W. and Elizabeth A. Naftzinger ("Naftzingers"). The factual and procedural history of this case follows.

In 1974, Shearers entered judgment by confession against Naftzingers in the amount of $9,600.00, at No. 610 September Term 1974, based on a 1965 judgment note. "Praecipes for writs of revival were filed on May 29, 1979, May 10, 1984, and June 7, 1989." (Trial court opinion, 1/2/97 at 2, citing Naftzingers' answer with new matter, ¶¶ 5–12; Shearers' reply to new matter, ¶¶ 5–12.)[1] On June 19, 1996, Shearers filed the praecipe for writ of revival that is the subject of this appeal.

Naftzingers raised a statute of limitations defense in their new matter, based upon 42 Pa.C.S.A. § 5529(a), which provides:

§ 5529. **Twenty year limitation**

**(a) Execution against personal property.**—An execution against personal property must be issued within 20 years after the entry of the judgment upon which the execution is to be issued.

1976, July 9, P.L. 586, No. 142, § 2, effective June 27, 1978. As amended 1980, Dec. 5, P.L. 1104, No. 189, § 5, imd. effective. Shearers filed a reply to new matter, and later filed an affidavit alleging that Naftzingers' failure to respond to Shearers' request for admissions resulted in Naftzingers' admission that neither Naftzingers nor anyone on their behalf had made any payments on the debt from 1974 to the present. (R. at 24–32.) Both parties submitted motions for summary judgment, and stipulated that their motions would be decided based on the briefs and oral argument held on December 11, 1996. (R. at 66–67.) On June 2, 1997, the trial court, the Honorable Harold E. Sheely, P.J., entered an order granting Shearers' motion for summary judgment and denying Naftzingers' motion for summary judgment. (R. at 68–74.) This timely appeal followed.

As already noted, the only issue before us is whether the statute of limitations set forth *supra* bars the 1996 writ of revival. Shearers do not claim that theirs is not a judgment against personalty; therefore, we will not explore this issue.[2] They do, however, claim that they are only seeking to revive the judgment, not to execute on it, and that the statute of limitations set forth in § 5529(a) is therefore inapplicable. (Appellees' brief at 3.) While they are arguably correct at this moment, we can see no purpose in their reviving a judgment upon which they would be precluded from executing as a matter of law because the statute of limitations had run. As a result, we address the issue.

■ Assuming without deciding, therefore, that the judgment at issue is a judgment against personalty, we must first determine whether the writ of revival is applicable to judgments against personalty. We conclude that it is. The writ of revival is found at Pa.R.Civ.P. 3025 through 3030. The relevant section provides:

**RULE 3025. COMMENCEMENT OF PROCEEDINGS. VENUE**

A proceeding to revive and continue the lien of a judgment may be commenced by filing with the prothonotary of the county in which the judgment has been entered

---

**1.** These praecipes are not a part of the certified record.

**2.** Naftzingers aver in their brief that they have owned no realty for at least ten years. (Appellants' brief at 7.) Because they are also arguing that the judgment applicable to this case is the one entered in 1974, however, we fail to see how they would benefit from this averment under their theory of the case.

(1) a praecipe for a writ of revival in substantially the form provided by rule 3033, or

(2) an agreement to revive judgment in substantially the form provided by Rule 3034.

Pa.R.Civ.P. 3025, 42 Pa.C.S.A. As the Note to the Rule provides, the substantive law governing revival of judgments is found in the Judgment Lien Law of 1947, 12 P.S. § 877 et seq.[3] The explanatory comment indicates that the writ of revival replaced the writ of *scire facias* under Section 4 of the Judgment Lien Law. Explanatory Comment—1994, Rules 3025–3027, 42 Pa.C.S.A. As a result, we look to cases and statutes discussing the writ of *scire facias* to determine whether the writ of revival is applicable to judgments against personalty for purposes of interpreting § 5529(a).

The Historical Note to § 5529 indicates that the section was derived from the Act of May 19, 1887. That Act provided:

> [E]xecution may issue upon any judgment of record in any of the courts of this Commonwealth, notwithstanding such judgment may have lost its lien upon real estate, without a previous writ of *scire facias* to revive the same: *Provided however, That such execution shall be confined or restricted to the personal property only of the debtor,* and that such execution shall not issue after the lapse of twenty years from the maturity of the judgment: *And provided further, That, at the same time execution is issued, a scire facias shall be issued to revive the judgment upon which said execution is issued;* and, in case the defendant or defendants in said writs file an affidavit alleging a just and legal defense against the revival of said judgment, it shall be lawful for the court, or a judge thereof in vacation, to stay the writ of *fieri facias,*[4] by an order preserving the lien

thereof, and to order the *scire facias* on the head of the list for trial at the next term for the trial of civil cases.

The Act of May 19, 1887 (P.L. 132), § 1 (12 P.S. § 2094) (emphasis in original and added). From the italicized sections of the Act, it is clear that a *scire facias* was necessary to revive a judgment against personalty before execution could issue. Nothing appearing to have changed the law in this regard, we find that the same is true today.

■ Next, we must construe the language of the statute requiring that execution be issued "within 20 years *after the entry of the judgment upon which the execution is to be issued.*" 42 Pa.C.S.A. § 5529(a) (emphasis added). The pivotal question before us is whether this 20-year statutory period commences from the original entry of judgment, or from the revived judgment. To answer it, we have examined numerous older cases and treatises explaining the ancient common law writ of *scire facias* in this and other jurisdictions.

In 2 A.C. Freeman, A Treatise of the Law of Judgments § 1101, at 2289–2290 (*revised by* Edward W. Tuttle, 5th ed. 1925), the authors set forth the position of a majority of jurisdictions that "The judgment which may be rendered for the plaintiff on scire facias is not a new judgment for the amount of the original debt, damages, and costs. The entry should be 'that plaintiff have execution for the judgment mentioned in the said scire facias and his costs.'" *Id.,* citing cases. The authors then observe:

> Under the Pennsylvania practice scire facias is not a mere judgment that execution issue, but a new judgment for a greater sum than the old one. The new judgment is a lien on lands not bound by the old one. It seems also to merge the original judgment, so that if a second scire facias is

3. As the Explanatory Comment—1994 to the Rules regarding revival of judgments indicates:

> [T]he Judgment Lien Law of 1947 was repealed in 1978 by Section 2(a) of the Judiciary Act Repealer Act (JARA), 42 P.S. § 20002(a) and was not reenacted as part of the Judicial Code or otherwise. Portions of the 1947 statute not supplanted by rules of civil procedure continued in effect as part of the common law

under the fail-safe provision of Section 3(b) of JARA, 42 P.S. § 20003(b).

Explanatory Comment—1994, Pa.R.Civ.P. 3025–3027, 42 Pa.C.S.A.

4. *"Fieri facias"* is "a writ of execution commanding the sheriff to levy and make the amount of a judgment from the goods and chattels of the judgment debtor." Black's Law Dictionary 565 (5th ed. 1979).

desired, it can only be obtained on the first scire facias, and not on the original judgment.

*Id.* at 2290, citing cases. Next, the authors explain the implications of this distinction: execution will issue on the original rather than the new judgment *"[u]nless the proceeding be regarded as a new and independent action and results in a judgment quod recuperet...."* [5] *Id.,* § 1102 at 2292–2293 (emphasis added). This is precisely the situation in Pennsylvania.

As long ago as 1841, our supreme court compared the proceedings on a *scire facias quare executi[onem]* [6] *non* in England, with Pennsylvania's writ of *scire facias. Custer v. Detterer,* 3 Watts & Serg. 28 (1841). The *Custer* court observed that the English writ merely entitled the plaintiff to execution on the original judgment, whereas "In this state, it is not a judgment that plaintiff shall have execution, but is a new judgment for a greater sum." *Id.* at 35. The court then traced Pennsylvania's practice back at least to 1740, thus concluding that the practice was ancient enough to have become the law. *Id.* at 36. Likewise in 1836, our supreme court opined, "It is decisive that a *scire facias* is a substitute in practice here, for an action of debt elsewhere; and that the judgment on it is *quod r[e]cuperet,* instead of a bare award of execution." *Hays v. Shannon,* 5 Watts 548, 549 (1836).

In 1896, the United States Supreme Court interpreted the writ of *scire facias* under Pennsylvania law. *Owens v. McCloskey,* 161 U.S. 642, 16 S.Ct. 693, 40 L.Ed. 837 (1896). *Owens* involved a plaintiff who obtained a judgment against two Pennsylvania defendants, one of whom had moved to Louisiana by the time plaintiff Owens twice revived the judgment by *scire facias.* Nineteen years after the original judgment was entered in 1861, and nine years after the second *scire facias* was issued in 1871, Owens, who was a

Pennsylvania resident, filed a petition in the Circuit Court of the United States for the Eastern District of Louisiana setting forth the recovery of judgment and the issuance of the writs of *scire facias* against the two defendants. *Id.* at 644, 16 S.Ct. 693. Louisiana's statute of limitations barred judgments "rendered within or without the state" after ten years. *Id.* at 645, 16 S.Ct. 693. Owens therefore chose to amend his petition to rely upon the 1871 judgment. The Supreme Court found that under Pennsylvania law, such an election was proper. As the Supreme Court observed:

> Ordinarily, the writ of scire facias to revive a judgment is a judicial writ, to continue the effect of, and have execution of, the former judgment, although in all cases it is in the nature of an action, as defendant may plead any matter in bar of execution, as, for instance, a denial of the existence of the record or a subsequent satisfaction or discharge.
>
> . . . .
>
> But in Pennsylvania it is held that a scire facias is in such wise a substitute in that state for an action of debt elsewhere that the judgment should be quod recuperet, instead of a bare award of execution; and hence, that a judgment on scire facias cannot be avoided because the original judgment might have been. *Duff v. Wynkoop,* 74 Pa.St. 300; *Buehler v. Buffington,* 43 Pa.St. 278; *Conyngham Tp. v. Walter,* 95 Pa.St. 85. Accordingly, the judgment [on scire facias] of May 10, 1871, was a judgment for the recovery of the amount of the judgment [on scire facias] of 1866, with interest added thereon to date, and the judgment of 1866 was a similar judgment on the original judgment of June 17, 1861.

*Id.* at 645–646, 16 S.Ct. 693.[7]

Our own research supports the view that Pennsylvania's is the minority position, in

---

**5.** "Quod recuperet" is the ordinary form of a judgment for the plaintiff in an action at law. It means, literally "[t]hat he recover." Black's Law Dictionary 1129 (5th ed. 1979).

**6.** The last letter[s] of the word are illegible in the text. While there does not appear to be space for four additional letters on the line of text on

which the expression appears, our search of two legal dictionaries reveals no other possibility.

**7.** Nevertheless, the Supreme Court agreed with the Circuit Court that, viewed either as a new judgment or as a revival of the prior judgment, the 1871 writ could not be enforced in Louisiana. Viewed as a new judgment, Pennsylvania lacked personal jurisdiction over Henry in 1871: viewed

which a writ of *scire facias* is *quod recuperet,* an action of debt. *See* cases cited *supra. See also Hopkins v. Stockdale,* 117 Pa. 365, 11 A. 368 (1887) (setting forth the trial court opinion noting that a *sci. fa.* is the equivalent of an action of debt, and that the judgment " 'is quod recuperet, not, as elsewhere, merely an award of execution[,]' " quoting *Stewart v. Peterson,* 63 Pa. 230, 232 (1869)); *Duff v. Wynkoop,* 74 Pa. 300, 305 (1874).[8]

More recently, in *Croskey v. Croskey,* 306 Pa. 423, 160 A. 103 (1932), our supreme court noted that the common law presumption of payment of a debt, which arises twenty years after entry of judgment, is to be measured, not from the entry of the original judgment, but from the entry of judgment on the *scire facias. Id.* at 426, 160 A. at 104. As the supreme court stated:

> [I]t may be observed that we are not dealing with the original judgment or with a presumption of its payment, the judgment in question is that entered on the sci. fa., as to which, of course, there is no presumption. It was entered within twenty years of the issue and service of the sci. fa. Indeed, as to the original judgment, the law is to the contrary, the sci. fa. to revive it having issued within twenty years.

*Id.* at 426, 160 A. at 104. The court observed that in the cases relied upon by defendant, the presumption of payment was upheld because of the pendency of the *sci. fa.* for more than twenty years. *Id.*[9]

Likewise, in *Davis v. Davis,* 174 F. 786 (1909), the Circuit Court of Appeals for the Fourth Circuit observed, "unlike the practice in England and in most of the other states of the Union, the judgment upon scire facias in Pennsylvania is a judgment quod recuperet...." *Id.* at 791. As a result, the court noted that because the defendant was not a

resident of Pennsylvania in 1906 when the judgment entered against her in 1897 was revived, she might have a defense on the merits to the 1906 revival.

We recognize that there are conflicting views in Pennsylvania as to the nature of the writ of *scire facias.* As Judge, later Chief Justice, Michael J. Eagen opined before he followed the rule we set forth *supra:*

> True, there are confusing statements in Pennsylvania authorities in regard to the nature and effect of the proceedings.
>
> In *Irwin v. Nixon's Heirs,* 11 Pa. 419, it was held that the judgment on a scire facias is not a new judgment giving only vitality from that time but it is a revival of the original judgment giving or rather continuing its vitality, with all of its incidents, from the time of its rendition. In *Grover et al. vs. Boen [Boon],* 124 Pa. 399, 16 A. 885, it was held after a judgment of revival, the execution should issue upon the original judgment rather than the latter one on the theory that no new action was involved....

*First National Bank of Scranton v. Jermyn,* 50 Lackawanna Jurist 57, 60–61 (1948) (Eagen, J.) *See also Lyon ex rel. Conklin v. Cleveland,* 170 Pa. 611, 33 A. 143 (1895) (opining that the revival of a judgment "means simply a new award of execution process for its collection[ ]"); *Eldred v. Hazlett's Administrator,* 38 Pa. 16 (1860) ("The revival of the original judgment is but a continuation of it.").

Naftzingers rely heavily upon this language in *Eldred.* As already noted, however, we acknowledge the conflicting state of the law in some of the older cases, including *Eldred.* We also note that the writ of *scire facias* in *Eldred* was described by that court as "a judgment on a sci. fa. de novo quare ex.

---

as a revival of the 1861 judgment, the action was time-barred.

**8.** *But see Green Ridge Bank v. Edwards,* 247 Pa.Super. 231, 235–39, 372 A.2d 23, 25–26 (1977) (in which Judge Spaeth, writing for a divided court, limits *Duff* to executions brought within the Act of 1705, sect. 9, 1 SmL. 57, 61 (1810)). The Supreme Court does not appear to have shared this view of *Duff. See supra.*

**9.** The trial court had dissolved an attachment served on a garnishee for three reasons, two of which are relevant here: 1) the presumption of payment after twenty years from the entry of the original judgment; and 2) the applicability of the Act of May 19, 1887. In addition to the reasons stated above for reversal, the supreme court also found that the Act of May 19, 1887 did not apply because a writ of attachment sur judgment is not a writ of execution. *Id.* at 426–427, 160 A. at 104.

non." *Eldred, supra* at 32. Thus, the court may have been following English law. Furthermore, the point of error raising the issue involved a claim by defendants that the original judgment was obtained through fraud; therefore, the court refused to "raise the stream above the fountain" by allowing the *sci. fa.* conclusively to determine the validity of the original judgment. *Id.* at 24, 32. Thus, we find *Eldred* distinguishable from the case before us, in which Naftzingers do not contest the validity of the original judgment.

We turn, then to the implications of Pennsylvania's interpretation of the writ of *scire facias* on the issue before us. The authors of Freeman on Judgments, *supra,* address this issue:

> Whether in the case of a judgment which has been revived the statute [of limitations] runs from the date of the original judgment or that of the revivor depends upon whether the judgment or order of revival is regarded as a new cause of action. According to some authorities a proceeding by scire facias to revive a judgment is a new action rather than a continuation of the old, and results in a new judgment constituting a new cause of action, upon which a new period of limitations begins to run.

*Id.,* § 1081 at 2249. The authors then note that "[t]his is the rule in Pennsylvania." *Id.* at 2250 n. 8, citing *Owens v. Henry, supra;* [10] *Davis v. Davis, supra.*

Naftzingers, however, rely upon the language in *Davis* stating that "the life of a judgment in Pennsylvania is 20 years. . . ." *Id.* We do not disagree; rather, we find this statement begs the question, to which judgment does the statute refer? According to Freeman, in Pennsylvania, the statute refers to the most recently revived judgment.

■ Finally, Naftzingers argue that the Shearers' failure "to have a judgment of revival entered in any of the preceding revival actions precluded any later attempts to revive the judgment." (Appellants' brief at 8, citing *Allied Material Handling v. Agostini,*

414 Pa.Super. 175, 606 A.2d 923 (1992), *appeal denied,* 532 Pa. 650, 615 A.2d 340 (1992).) Once again we turn to the Explanatory Comment—1994 to Pa.R.Civ.P. 3025–3027 for guidance:

> Despite longstanding practice and the continuing vitality of the Judgment Lien Law, recent case law has held that the mere indexing of a writ of revival, without the entry of a judgment of revival, was insufficient to continue and revive the lien of judgment. [N.]2. To clarify the intent of the rules of civil procedure and to promote certainty by continuing the prior practice, the rules governing revival of judgments have been amended to incorporate the substance of Section 4 of the Judgment Lien Law. . . .
>
> . . . .
>
> [N.]2. See *Allied Material Handling Systems v. Agnostini* [sic] *et al.,* 414 Pa.Super. 175, 606 A.2d 923 (1992).

Explanatory Comment—1994, Pa.R.Civ.P. 3025–3027, 42 Pa.C.S.A. The section of the Judgment Lien Law that follows provides that the mere indexing a writ of *scire facias* in the judgment index acts as a lien upon all real property of the defendant, whether previously owned or recently acquired. *Id.,* quoting § 4 of the Judgment Lien Law of 1947, 12 P.S. § 880 (repealed). Thus, we find that Naftzingers' reliance on *Agostini, supra,* is misplaced. If indexing the writ is all that is required to revive a lien on realty, certainly more cannot be required to revive a judgment against personalty.

Additionally, as already noted, neither the praecipes to revive the writs nor the dockets reflecting indexing of the writs are part of the certified record. As a result, we are unable to verify the accuracy of Naftzingers' allegations, and must find this issue waived.

■ We recognize that Pennsylvania's interpretation of the writ of *scire facias* is the minority view. We also recognize the persuasiveness of Naftzingers' argument that "nothing lasts forever, including a judgment." Additionally, we acknowledge that 42 Pa. C.S.A. § 5529(a) could be more clearly word-

---

10. *Owens v. McCloskey,* discussed *supra,* and *Owens v. Henry* appear to be the same case, as both

are cited at 161 U.S. 642, 16 S.Ct. 693, 40 L.Ed. 837.

ed. *See, e.g., Farms v. Carlsbad Riverside Terrace Apartments, Inc.,* 102 N.M. 50, 690 P.2d 1044 (1984) (setting forth a New Mexico statute of limitations providing that actions founded on any judgment may be brought within seven years "from and after the rendition or revival of the judgment, and not afterward[ ]"). We must remember, however, that because "this Court's formal purpose is to maintain and effectuate the decisional law of our supreme court as faithfully as possible, we are not authorized to create or adopt a new standard." *Dominick v. Statesman Ins. Co.,* 692 A.2d 188 (Pa.Super.1997), *appeal denied,* No. ——, 1998 Pa.Lexis 466 (Pa. March 18, 1998), citing *Commonwealth v. Dugger,* 506 Pa. 537, 545, 486 A.2d 382, 386 (1985).

As long ago as 1740, the writ of *scire facias* in Pennsylvania took a path different from the one taken by a majority of jurisdictions. The legislature must have been aware of that fact when it drafted § 5529(a). We do not believe we violate either the spirit or the letter of § 5529(a) by allowing a judgment creditor to execute on a judgment within twenty years of its revival. If either the supreme court or the legislature disagrees, they are in a better position than we to effect change.

For all of the foregoing reasons, we affirm the trial court's order granting summary judgment as to Shearers and denying summary judgment as to Naftzingers.