## Lomis *against* Ruetter.

In an action of debt brought to recover a sum due for rent, on a lease under seal, the plaintiff cannot file a statement agreeably to the act of the 21st of March 1806, sect. 5; and the proper mode of taking advantage of such irregularity is by objecting to the evidence of the lease when offered.

In an action of debt upon a lease, a partner of the defendant in the business carried on with the demised premises, although not a party to the instrument, is incompetent as a witness.

A covenant by the lessor of a saw-mill, that "he will put up the dam and wing-dams, so as to drive at least two saws in low water," amounts to a guaranty that they shall be so put up, as that there shall always be sufficient water to drive two saws; and he cannot use the lowness of the water as an excuse for the non-fulfilment of his covenant.

A covenant by a lessor, that he will *pay* all repairs exceeding a certain sum, can not be so construed as to oblige him to *make* the repairs.

ERROR to the common pleas of *Dauphin* county.

This was an action of debt by Daniel N. L. Ruetter against Anthony W. Lomis, in which the plaintiff filed the following statement:

" Daniel N. L. Ruetter, the plaintiff, states that he sues to recover from Anthony W. Lomis, the defendant, the sum of 1500 dollars, for rent due to him from defendant, for the Burr Haven saw-mills, on an agreement between them made, dated the 3d of June 1834, being the rent due for the term of eighteen months from and after the 1st of October 1834; and the said plaintiff further claims the sum of 600 dollars for timber sold and delivered by him to said defendant; and the sum of 200 dollars for slabs sold by the said

[Lomis v. Ruetter.]

defendant, the property of the said plaintiff, which said several sums of money the said plaintiff avers are due to him, and ought to be recovered in this case."

The defendant protested against the plaintiff's right to file a statement in this case, objected to the same for want of material averments, and reserved the right to object, &c., prayed oyer of covenant, if any, on which this suit is brought, and pleaded covenants performed, with leave to give the special matters in evidence, and leave to add, alter, and amend, &c.

The plaintiff, to maintain the issue on his part, offered to read in evidence articles of agreement between Daniel N. L. Ruetter and E. Kingsbury and Anthony W. Lomis, executed by Anthony W. Lomis, defendant per self, and as agent for E. Kingsbury, as follows:

" Article of agreement made, concluded, and agreed upon, this 3d day of June, A. D. 1834, between Dr D. N. L. Ruetter, of Burr Haven, in the county of Dauphin, of the one part, and Elisha Kingsbury, of the county of Alstead, in the state of New Hampshire, and A. W. Lomis, of Burr Haven, aforesaid, of the other part, as follows, viz:—The said Daniel N. L. Ruetter, for the consideration hereinafter mentioned, hath, and by these presents doth lease, to the said Elisha Kingsbury and A. W. Lomis, for the term of three years, from and after the 1st day of October next, the Burr Haven Mills, with half an acre of ground thereto attached for a garden, together with all the appurtenances and appendages to the said mills belonging; and covenants to make and complete the following repairs, on or before the 1st day of October next, that is to say—

" He will put up the dam and wing-dams, as to drive at least two saws in low water, and put the mills in good running order. He is to leave in the mills a good set of saws, crowbars, and axe in each—also, a double mill-rope for drawing logs, and the truck for hauling off lumber. He will put the long house in good order for two families, reserving, nevertheless, to himself the shed containing the grain-bins. He is to furnish stabling for two cows and one horse, together with room therein for hay. He is to extend and finish the wharf to the long rock. He is to pay all repairs, not exceeding two dollars each, that is, taken separately. He is to put a large wheel in the middle floom, in case it is found that the present wheel is insufficient to drive the circular saws. Ruetter reserves all slabs that shall be cut at the mill, for purpose of cutting into lath. All poplar or walnut timber cut, shall be reckoned at the rate of three dollars and fifty cents, board measure, per thousand. In consideration whereof, the said Elisha Kingsbury and A. W. Lomis, for themselves, their heirs and assigns, do hereby covenant and agree to pay to the said Daniel N. L. Ruetter, his executors, administrators, or assigns, the yearly rent of 1000 dollars, in three payments of 333 dollars 33 cents each; that is to say, at

IX.—2 T*

[Lomis v. Ruetter.]

the end of each four months, from and after the commencement of
this lease, either in cash or in merchantable white pine lumber, cut to
bill of fair, proportioned length for rafting, at eight dollars per thou-
sand, at their option.   They are to pay all repairs that shall not
·exceed two dollars each; they are to keep the pond and racks clear
of drift; they are to keep the mill-roofs and siding in good order,
and at the expiration of this lease to deliver up the premises in good
order, wear and tear and unavoidable accidents excepted.   The un-
derstanding between the parties is, that the lessees are not to let or
underlease the premises to any other persons, without the lessor's
consent.   Witness their hands and seals, the date in the beginning
.written.

Signed,           " DANIEL N. L. RUETTER,   [L. s.]
                  " A. W. LOMIS, for plaintiff, [L. s.]
        " And agent for ELISHA KINGSBURY,           [L. s.]

" Witnesses present, DANIEL STINE,
                    " J. MONTGOMERY."

Defendant objected to the evidence as irrelevant, and incompe-
·tent to sustain the action, and not between the present parties; the
court overruled the objection, and admitted the evidence, to which
opinion of the court the plaintiff excepted.

The plaintiff then proved by the testimony of witnesses the occu-
pation of the mills by the defendant, under his lease, and gave evi-
dence to establish his right to recover for the slabs mentioned in
the statement.

The defendant, to maintain the issues on his part, called Elisha
Kingsbury as a witness; plaintiff objected on the ground of interest,
one partner not being a witness for another, though released, and
the court sustained the objection, to which opinion of the court the
defendant excepted.

The defendant then proved by a witness, that the mills were very
much out of repair at different times, and that during the summer
of 1835 the water was so low the mills could not be worked, and
this in consequence of the want of repairs, which the defendant
contended the plaintiff was bound to make.   That in April 1836,
the wing-dams were carried away by a freshet, and the defendant
then abandoned the mills.  This evidence gave rise to the exceptions
to the charge of the court, which was as follows:

" The supreme court has decided that where a sum of money is
payable in merchandize or produce, or in money, the party to pay
has an election to pay in merchandize or produce, at or before the
day, but after the day of payment, the election is gone, and an ac-
-tion may be maintained to recover the amount claimed; wherein
plaintiff may file a statement of the cause of action under our act
of assembly, and if he makes out his case, recover, unless there
has been a tender of the merchandize or produce.  2 *Penn. Rep.*
301.

[Lomis v. Ruetter.]

" By the lease in this case, the term was to commence on the 1st of October 1834, at which time the plaintiff was to have had the mills in good order. And there seems to be no dispute that the mills were not in order for running until the 24th of November 1834. And the evidence would, also, seem to indicate, that when the mills were started, they were not in good order to some extent.

" The defendant and his partner occupied them from the 24th of November 1834, to about the 10th of April 1836, when the dam was swept away. The house does not appear to have been ready at the time specified. The house was, perhaps, finished, as to the carpenter work, in the latter part of November, and had its first or rough coat of plastering. The white coat was not put on until the next spring.

" Had the defendant refused to enter into possession, in consequence of the premises not being ready, according to contract, he could have done so; and he could have sued for and recovered the damages thus sustained by reason of the disappointment.

" Having, however, taken possession, he is bound to pay the rent from the time he took possession; but still, he would be entitled to defalcate, or rather make as an equitable defence, the loss he sustained in consequence of not getting possession according to contract. And that will be a fit subject for the consideration of a jury.

" Again, the plaintiff by the contract was to put the mills in good running order. And if the party supposed he had done so, and commenced operations, but it turned out that it was not so done, then any loss he sustained in consequence of that, would be a proper subject for the consideration of the jury, as a deduction from the plaintiff's claim for rent.

" The plaintiff stipulated that 'he will put the dam and wing-dams so as to drive at least two saws in low water.' And this is one of the repairs which, by the terms of the contract, he was to make and complete on or before the 1st of October 1834. If the want of water which they experienced arose from the dam and wing-dam, not being so constructed, that any loss they sustained thereby ought to be deducted from the plaintiff's claim. But if the want of water was in consequence of the lowness of the water in the river, and not owing to any defect in the dam and wing-dam, it would not be a subject of deduction.

" The stipulations to be performed by the plaintiff, were conditions precedent, which the plaintiff was bound to perform before he could call on defendant to perform his covenants, unless the defendant, as he might do, waived them—and if he did waive them, by taking possession after the day for the commencement of the term, or before the necessary repairs had been done in a proper manner. He will be considered to have so far waived them, as to entitle the plaintiff to recover his rent, the jury making such deduction for the loss and disappointment sustained by defendant, as

[Lomis v. Ruetter.]

will compensate him therefor, even should deduction extinguish the whole claim of rent.

" The pleadings in this case will, if the facts be made out, entitle the plaintiff to recover whatever sum the jury shall believe to be due to him.

" Under the contract in this case, if you believe the word 'not' was inserted by mistake in that part of the plaintiff's stipulations which says, 'He is to pay all repairs *not* exceeding two dollars each, that is, taken separately,' as the subsequent provisions of the contract and the testimony of the witnesses would seem very clearly to indicate, then, if required by the defendant, he would have been bound in April 1836 to pay for the repair of the dam. But there is no evidence that he either required him to repair the dam, nor did he attempt to repair it himself."

Errors assigned:

1. There is error in the first bill of exceptions, in the admission of the evidence therein mentioned, as the covenant offered in evidence contained conditions precedent, performance of which plaintiff was bound to aver, and because the plaintiff's claim, being debt on covenant, is not embraced within the provisions of the act of 21st March 1806, which authorizes a statement to be filed.

2. There is error in the second bill of exceptions, in the rejection of the testimony of Elisha Kingsbury.

3. There is error in that part of the charge of the court in which it is said, that " the supreme court has decided, that where a sum of money is payable in merchandize or produce, or in money, the party to pay has an election to pay in merchandize or produce, on or before the day, but after the day of payment, the election is gone, and an action may be maintained to recover the amount claimed, where the plaintiff may file a statement of the cause of action under our act of assembly, and if he makes out his case, recover, unless there has been a tender of the merchandize or produce,"—inasmuch as the proposition upon which the supreme court pronounced the law referred to by the court of common pleas, differed materially from the case in hearing.

4. There is error in that part of the charge of the court in which they say " the plaintiff stipulated 'that he will put up the dam and wing-walls, so as to drive at least two saws in low water.' But if the want of water was in consequence of the lowness of the water in the river, and not owing to any defect in the dam and wing-dam, it would not be a subject of deduction," &c.

5. The court erred in not instructing the jury, that if they believed the plaintiff was bound to make all repairs exceeding two dollars, then he was bound to rebuild that part of the dam which was destroyed by the freshet in April 1836; and the court erred in saying, " there is no evidence that he (defendant) either required him (plaintiff) to repair the dam, nor did he attempt to repair it himself."

[Lomis v. Ruetter.]

*Alricks,* for plaintiff in error, on the subject of the first error assigned, cited 2 *Penn. Rep.* 63; 5 *Serg. & Rawle* 26; 2 *Penn. Prac.* 26; 3 *Serg. & Rawle* 253; 6 *Serg. & Rawle* 25; 6 *Binn.* 24; 4 *Wash. C. C. Rep.* 714.

*M'Cormick,* for defendant in error, on the same point, cited 2 *Penn. Rep.* 301; 6 *Serg. & Rawle* 54; 12 *Serg. & Rawle* 74; 17 *Serg. & Rawle* 424; 1 *Watts* 428; 1 *Penn. Prac.* 225.

The opinion of the court was delivered by

SERGEANT, J.—The plaintiff in this suit filed a statement instead of a declaration, and on the trial the defendant objected to the evidence offered of the articles of agreement of lease from the plaintiff to the defendant as irrelevant and incompetent, and not between the present parties. The court below admitted the evidence, and exception was taken by the plaintiff.

This is the point assigned as error in the first and third errors, and raises the question, whether, in an action of debt brought to recover, among other moneys, a sum due for rent on a lease under seal, the plaintiff may file a statement agreeably to the act of assembly of the 21st of March 1806, sect. 5. That act seems to have been designed to afford facilities to persons to recover debts due to them on instruments, or demands of a plain and simple kind, without the intervention of attorneys. It therefore confines the privilege of filing a statement to suits brought "for the recovery of a debt founded on a verbal promise, book account, note, bond, penal or single bill," or all or any of them. Although these words ought to receive, and have received, a liberal interpretation, yet a demand for rent due on a lease by a sealed instrument, does not seem to be comprised within them. Such a lease is neither a verbal promise, book account, note, bond, penal or single bill, nor can it, by any reasonable construction, be brought within these terms. It was certainly not the intent of the legislature to give the right to file a statement in every action of debt. This regarded not the form of the action, but the nature of the debt, and the manner in which it arose.

The act, therefore, confines the statement to a specific class of debts, simple in their character, plain in the evidence to prove them, and involving, ordinarily, nothing more than the right to money. Leases generally contain covenants and stipulations for the performance of various acts by both parties, as the present one does, and a suit upon them often involves the question of performance of conditions, defalcations for breaches or omissions, and various legal questions of a nice and complicated character, in which the legislature, by not including such demands, must have thought the ancient mode of pleading better calculated to attain justice between the parties. The farthest to which the court has gone in construing this act, falls short of the present case. I allude to the case of Gray *v.* Cunningham, 17 *Serg. & Rawle* 424, where it was held that a

statement might be filed in debt on a recognizance of bail in error. But such a recognizance would well fall within the word *bond*, being defined to be an obligation of record.    I do not concur with the defendant's counsel, that the existence of conditions precedent, to be performed before a title to the money can arise, is an objection to a statement.    The contrary seems to have been settled in Gordon *v.* Boyd, 6 *Serg. & Rawle* 53.    But I am of opinion that debt upon a lease under seal is not a suit which is comprehended within the provisions of the act of the 21st of March 1806, authorizing a statement.

That being the case, the court below should have rejected the lease when offered, as irrelevant to the statement filed.    There does not appear to me to be any more proper mode for the defendant to take advantage of the objection.    He could not do it by demurring, because, on the face of the statement filed, it does not appear to be a claim upon a lease under seal; it is merely averred to be an agreement of a certain date.    Nor would the court have struck off the statement on the defendant's motion, because the plaintiff possessed the right to make such a statement, if he chose to run the risk of supporting it by evidence.    The proper mode, when the evidence varies from the statement, and is of a character which would be inadmissible, if inserted in the statement, is to object to it when offered.    The plaintiff could not justly complain that he was taken by surprise, because the defendant had, at a previous stage of the cause, entered his objection and protest against a statement in such a suit as the present, and the plaintiff ought then to have withdrawn it and filed a declaration, if he intended to proceed with the suit.

*Second Error.*—There is nothing in this assignment of error. Although Kingsbury was not considered as having authorized the defendant to execute the lease for him, and therefore was not a party to the instrument, yet it appeared that he had been a partner of the defendant in the business carried on under it, and was therefore interested in the event of this suit, being liable to account to the defendant for his proportion of the sum recovered.

*Fourth Error.*—The plaintiff, when leasing the mills to the defendant, covenanted that "he would put up the dam and wingdams [so] as to drive at least two saws in low water," and this was one of the repairs which he was to make and complete before the first day of October following.    The plaintiff alleged that this covenant was broken, inasmuch as the water had at times become so low that he was not able to work.    The court charged, that if the want of water which the defendant experienced arose from the dam and wing-dams not being constructed by the 1st of October 1834, then any loss sustained ought to be deducted from the plaintiff's claim.    But if the want of water was in consequence of the lowness of the water in the river, and not owing to any defect in the dam and wing-dams, it would not be a subject of deduction.

It would seem, however, that something more was contemplated by the covenant than merely that the plaintiff would put up the dam and wing-dams. " He will put up the dam and wing-dams *so as to drive at least* two saws in low water." This includes the effect they would produce after being put up, as well as the putting them up. It seems to amount to a guaranty that they should be so put up as even in low water to drive at least two saws. The lowness of the water seems to be the thing warranted against, and cannot be used as an excuse for non-fulfilment of the covenant. The cases cited show that if a party will expressly covenant to do a thing, he is bound to fulfil it if by any possibility he may; and if he do not, the loss sustained must be borne by him, and not by the covenantee, who trusted to the covenant. In this answer of the court we think there was error.

*Fifth Error.*—This error is not sustained. It originated in the defendant's idea that the plaintiff was bound to *make* the repairs when they exceeded two dollars. But this is not so. The covenant is, " he is to *pay* all repairs exceeding two dollars." Of course, the charge of the court was correct, that the plaintiff was only bound to pay for the repairs of the dam when made, and did not break his covenant by not making the repair himself.

Judgment reversed, and a *venire facias de novo* awarded.